UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROEI AZAR, et al.,

           Plaintiffs,

    v.

YELP, INC., et al.,

           Defendants.

Case No. 18-cv-00400-EMC

**ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

Docket No. 47

This putative securities class action, brought under Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 against Defendants Yelp, Inc., its CEO Jeremy Stoppelman, CFO Lanny Baker, and COO Jed Nachman (collectively, "Yelp"), alleges Yelp made false and misleading statements regarding its expected revenue for fiscal year 2017, particularly in relation to its advertising program with local businesses. On November 27, 2018, the Court issued an Order granting in part and denying in part Yelp's motion to dismiss the complaint ("FAC"). Docket No. 43 ("Order"). The Order ruled that the earnings guidance Yelp issued on February 9, 2017 was a "forward-looking statement . . . accompanied by meaningful cautionary statements" protected by the safe harbor provision in the Private Securities Litigation Reform Act ("PSLRA"), and therefore not actionable. *Id.* at 12–15. However, several other statements Yelp made on February 9 (alleged in the First Amended Complaint ("FAC") at ¶¶ 81 and 83), February 14 (FAC ¶¶ 87 and 89), and March 1 (FAC ¶ 99), 2017 were non-forward-looking and misleading, and therefore actionable. *Id.* at 18–23, 25–26. The Order further found that Plaintiffs had sufficiently alleged that Yelp made the actionable statements with scienter, and that the statements were a substantial factor in causing the drop in Yelp's stock price and in turn Plaintiffs' loss. *Id.* at 26–37.

1  On December 17, 2018, Yelp moved for leave to file a motion for reconsideration of the

2 Order. Docket No. 47 ("Mot."). According to Yelp, the Court erred in its loss causation analysis

3 by linking the decline in stock price to the forward-looking earnings projections it had dismissed

4 as non-actionable under the PSLRA safe harbor. *See id.* at 2. For the reasons discussed below, I

5 recommend that the Court **DENY** the motion.

6       **I.**  **LEGAL STANDARD**

7  Under Local Rule 7-9, a party must seek leave of the court to file a motion for

8 reconsideration. N.D. Civ. L.R. 7-9(a). To prevail, a party "must specifically show reasonable

9 diligence in bringing the motion" *and* establish one of the following:

10     (1) That at the time of the motion for leave, a material difference in
      fact or law exists from that which was presented to the Court before
11     entry of the interlocutory order for which reconsideration is sought.
      The party also must show that in the exercise of reasonable diligence
12     the party applying for reconsideration did not know such fact or law
      at the time of the interlocutory order; or
13

      (2) The emergence of new material facts or a change of law
14     occurring after the time of such order; or

15     (3) A manifest failure by the Court to consider material facts or
      dispositive legal arguments which were presented to the Court
16     before such interlocutory order.

17 N.D. Civ. L.R. 7-9(b). Motions for reconsideration are generally disfavored, and are not the place

18 for parties to make new arguments not raised in their original briefs. *Northwest Acceptance Corp.*

19 *v. Lynnwood Equip., Inc.*, 841 F.2d 918, 925–26 (9th Cir. 1988). "Nor is reconsideration to be

20 used to ask the Court to rethink what it has already thought." *Garcia v. City of Napa*, No. C-13-

21 03886 EDL, 2014 WL 342085, at \*1 (N.D. Cal. Jan. 28, 2014) (citing *United States v. Rezzonico*,

22 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998)).

23  Yelp contends that reconsideration is warranted under Local Rule 7-9(b)(3) because "the

24 Court failed to consider the statutory 'safe harbor' applicable to forward looking statements in

25 making its ruling on loss causation and may have erroneously construed the allegations by

26 Plaintiffs to allege loss causation based on a change in actual results instead of a change to a non-

27 actionable guidance." Mot. at 4.

28  The parties' briefing and oral arguments on the motion to dismiss focused primarily on the

2

1    falsity and scienter elements of the Rule 10b-5 claim. As a result, the Order also addressed falsity

2    and scienter in detail, while devoting relatively less analysis to loss causation. Yelp is correct that

3    the Order did not explicitly address Yelp's argument that loss causation cannot be based on a

4    revision to non-actionable earnings guidance. But because Plaintiffs' loss causation theory does

5    not rely solely on the discrepancy between the February 9 guidance and the May 9 revision,

6    Yelp's argument is not "dispositive" for the purposes of Local Rule 7-9(b).

## II.    DISCUSSION

A.    The Order's Loss Causation Analysis

9         "To prove loss causation, the plaintiff must demonstrate a causal connection between the

10   deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the

11   plaintiff." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1027 (9th Cir. 1999).

12   The case law recognizes two ways of establishing loss causation. Under the "corrective

13   disclosure" approach, "the complaint must allege that the practices that the plaintiff contends are

14   fraudulent were revealed to the market and caused the resulting losses." *Metzler Inv. GMBH v.*

15   *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008). Under the "materialization of the

16   risk" approach, the plaintiff must plead that "the defendant misrepresented or omitted the *very*

17   *facts* that were a substantial factor in causing the plaintiff's economic loss." *Nuveen Mun. High*

18   *Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1120 (9th Cir. 2013)

19   (emphasis in original).

20         The Order found that Plaintiffs here adequately alleged loss causation under the

21   "materialization of the risk" approach:

22             First, Defendants' statements from February 9 and 14 failed to
              mention the retention problems manifesting in late 2016 and early
23             2017. Second, there is no dispute that the revelation of the retention
              problems was a substantial factor in causing the drop in Plaintiffs'
24             Yelp shares. Defendants concede that it was the "decline in
              retention that . . . impacted [Yelp's] outlook." Accordingly,
25             Plaintiffs have "demonstrate[d] a causal connection between
              [Defendants' allegedly] deceptive acts . . . and the injury suffered by
26             the" Plaintiffs.

27   Order at 37 (citations omitted).

28

3

1    B.    Yelp's Argument

2         Yelp argues that the above analysis is flawed because the "Court dismissed Plaintiffs'

3    allegations related to the February earnings guidance as protected by the safe harbor," so "a

4    change to the earnings guidance cannot satisfy the loss causation pleading requirement."  Mot. at

5    6.  As support for its contention, Yelp points to case law holding that (1) "a forward-looking

6    statement is rendered immaterial as a matter of law when accompanied by meaningful cautionary

7    language," *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 594 F.3d 783, 796 (11th Cir.

8    2010),[1] and (2) that loss causation requires "a causal connection between the material

9    misrepresentation and the loss," *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  Yelp

10   reasons because its February 9 earnings guidance is an "immaterial" statement, it cannot constitute

11   the "material misrepresentation" causing Plaintiffs' loss.  *See* Mot. at 6.  Nor can Yelp's May 9

12   revision to the February guidance.  *See id.* ("[A] change to the earnings guidance *cannot* satisfy

13   the loss causation pleading requirement . . . .") (emphasis in original).

14        According to Yelp, Plaintiffs "unequivocally" cite only the May 9 revision to the February

15   9 guidance as the cause of Yelp's stock decline, and "there are no particularized allegations of loss

16   causation as to any of the five paragraphs in the FAC that this Court identifies as actionable."  *Id.*

17   at 7–8.  As a result, Plaintiffs have failed to allege loss causation and their complaint should be

18   dismissed.

19   C.    Analysis

20        As an initial matter, Yelp is correct that loss causation cannot hinge upon a non-actionable

21   statement.  The Supreme Court has instructed that loss causation requires "a causal connection

22   between the *material* misrepresentation and the loss."  *Dura*, 544 U.S. at 342 (emphasis added).

23   The Ninth Circuit has similarly explained that loss causation requires "a causal connection

24   between the deceptive acts that form the basis for the claim of securities fraud and the injury

25   suffered by the plaintiff."  *Ambassador Hotel*, 189 F.3d at 1027.  Because Yelp's February 9

26   earnings guidance is a forward-looking statement immunized by the PSLRA safe harbor, it is not a

27

28   _____

     [1] Yelp mistakenly cites *Edward J. Goodman* as a Ninth Circuit decision.  *See* Mot. at 5.

                                                4

deceptive act that forms the basis for Plaintiffs' claim. It therefore cannot be the basis of

Plaintiffs' loss causation allegations. *See id.* ("[T]he loss causation requirement limits the ability

of plaintiffs to recover for losses sustained on the basis of factors unrelated to any

misrepresentation or fraud.").

But Yelp goes further than that. It argues that because the February 9 guidance is

immunized, the May 9 revision to the guidance likewise cannot support loss causation, because "a

change to an immaterial statement cannot reveal a misrepresentation actionable under Rule 10b-

5." Mot. at 8. In support of this argument, Yelp characterizes Plaintiffs' loss causation allegations

as "rel[ying] solely on changes" between the February 9 earnings guidance and the May 9

revision. *Id.* at 7. This is, however, a mischaracterization. Plaintiffs assert that the decline in

Yelp's stock was "a direct result of the[] disclosures" of "the *cause* of the Company's downgrade

to its 2017 guidance . . . and/or the concealed risks materialized, on or about May 9, 2017." FAC

¶ 104 (emphasis added); *see id.* ¶ 107 ("The damage suffered by Plaintiffs . . . was a direct result

of Defendants' fraudulent scheme to . . . withhold material information from Yelp's investors, and

the subsequent significant decline in the value of Yelp's securities when the truth was revealed.").

Notably, Plaintiffs allege that the "cause" of the May 9 downward revision to Yelp's earnings

guidance was not the original February 9 guidance, but "the Company's ability to add new paying

advertising accounts and retain older accounts as it made the transition from CPM to CPC

pricing." *Id.* ¶ 106. And their allegations of "concealed risks" and "withh[eld] material

information" are not limited to the February 9 guidance. To the contrary, Plaintiffs specifically

allege that the statements found to be actionable "failed to disclose" Yelp was experiencing a

problematic churn rate among its local advertisers, which was having a material impact on 2017

revenues.[2] *Id.* ¶¶ 82, 84, 88, 90, 100. When the Court asked Plaintiffs' counsel at the hearing,

"[h]ow much of your case is dependent upon the actual [February 9] forecast?" counsel made clear

that Plaintiffs' claims were not predicated on the February 9 guidance itself, but the churn

[2] And while the cautionary language accompanying the February 9 guidance disclosed the risks associated with Yelp's cost-per-click local advertising model, these later statements were not immunized by any risk disclosures.

1    problems Yelp neglected to mention in either the guidance or its subsequent actionable statements.

2    Plaintiffs' counsel acknowledged that "the stock certainly moved on May 9th because the company

3    changed its forecast," but explained that "the reason that the new forecast was substantially lower .

4    . . was because of the churn that we say [Defendants] were aware of and didn't disclose." Docket

5    No. 42 at 31:7–10, 16–19. The Court then clarified:

6        THE COURT: So it's the fact that the forecast was predicated on
    false facts that were not disclosed.

7

8        MR. RUF: Correct.

9        THE COURT: False assumptions that were not disclosed.

10       MR. RUF: Correct.

11   *Id.* at 32:1–5.

12      Thus, the premise of Yelp's motion—that Plaintiffs' loss causation theory relies solely on

13   the market's reaction to the discrepancy between the non-actionable February 9 guidance and the

14   May 9 revision—is flawed. Plaintiffs' theory in fact posits that the May 9 revision revealed not

15   only that Yelp's February 9 guidance was misleadingly optimistic, but also that Yelp's other

16   statements from February 9, February 14, and March 1 were too. Accordingly, it is not fatal to

17   Plaintiffs' loss causation allegations that the February 9 guidance was dismissed as non-

18   actionable. "[I]n *Dura*, the Supreme Court agreed with the principle that loss causation is

19   established where a plaintiff alleges that, after the truth becomes known, the price of the stock

20   falls." *Westley v. Oclaro, Inc.*, 897 F. Supp. 2d 902, 931 (N.D. Cal. 2012), *on reconsideration in*

21   *part* (Jan. 10, 2013) (citing *Dura*, 544 U.S. at 344). Here, Plaintiffs have alleged that Yelp made

22   misleading statements and the price of its stock fell after the truth about its churn issues were

23   disclosed on May 9.[3] That is enough. *See id.* ("At the end of the day, all that Plaintiffs have to do

24

25   [3] Yelp points out that the Order appears to misconstrue the complaint in finding that it alleged "the
market was reacting to news that Yelp's financial performance was worse than previously

26   projected," Order at 36, when the complaint actually concedes that "Yelp's actual results met its
projections for the first quarter of 2017," Mot. at 8 n.3. The use of the phrase "financial

27   performance" may have been inartful, since it could be understood to refer to Yelp's earnings
results in the first quarter of 2017, but the phrase was intended to refer to the performance of the

28   local advertising program leading up to the May 9 disclosure, which triggered the downward
adjustment in earnings projections for the rest of 2017.

1    at this [motion to dismiss] juncture of the proceedings is '*plausibly* establish loss causation,' not

2    definitively establish it.") (quoting *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1057 (9th Cir.

3    2008)).

4        Yelp cites two cases in which Rule 10b-5 claims based on failure to meet earnings

5    projections were dismissed, but both are distinguishable from this case. In the first, the Eleventh

6    Circuit dismissed the suit based on the plaintiffs' failure to establish scienter, and expressly noted

7    that it was not addressing loss causation. *See Edward J. Goodman*, 594 F.3d at 789–90. The

8    decision thus does not speak to the sufficiency of Plaintiffs' loss causation allegations in this case.

9        In the second, Judge Seeborg found loss causation insufficiently pleaded where the

10   plaintiffs pointed to "a *correlation* and not a *causation*" between the alleged misrepresentation and

11   the subsequent drop in the defendant company's stock price. *In re Nvidia Corp. Securities Litig.*,

12   No. 08-CV-04260-RS, 2010 WL 4117561, at *12 (N.D. Cal. Oct. 19, 2010) (emphasis in original).

13   The plaintiffs in *Nvidia* alleged that the company had failed to timely disclose that it would need

14   to take a near-$200 million charge against its revenue to cover costs associated with defective

15   products. *Id.* at *1–2. The company belatedly issued a press release announcing the accounting

16   charge, and simultaneously lowered its revenue projections for the quarter. *Id.* at *2. Its stock

17   price plummeted the next day. *Id.* The court dismissed the suit because the plaintiffs merely

18   alleged that the "charge negatively impacted NVIDIA's financial condition as well as its

19   reputation in the market," but not that there was "the necessary causal link between the alleged

20   fraud and the drop in the Company's stock price." *Id.* at *12. Moreover, the plaintiffs failed to

21   address the "far more plausible reason for the resulting drop in NVIDIA's stock price—the

22   Company failed to hit prior earnings estimates." *Id.* (citation and alterations omitted).

23       In contrast, as explained above, Plaintiffs have specifically alleged that Yelp's local

24   advertiser churn issues—the subject of Yelp's misleading omissions—caused the drop in stock

25   price. They have also pointed to statements by analysts and Yelp's own executives identifying

26   advertiser churn as the root cause of the stock decline, as opposed to a general failure to hit prior

27   earnings estimates. *See, e.g.*, FAC ¶ 108 (analyst report attributing the May 9 lowering of

28   earnings projections to "greater advertiser churn"), ¶ 63 (Defendant Baker stating on May 9

7

1  conference call that "[t]he primary factor within the change in business outlook is the local

2  revenue challenge we experienced in the first quarter"). Plaintiffs have therefore established the

3  necessary causal link between Yelp's actionable misrepresentations and the drop in Yelp's stock

4  price.[4]

5  More instructive than either *Edward J. Goodman* or *Nvidia* is *In re Urban Outfitters, Inc.*

6  *Sec. Litig.*, 103 F. Supp. 3d 635 (E.D. Pa. 2015). The defendant company there owned five

7  fashion retail brands, of which the UO brand accounted for a "dominant portion" of the company's

8  total sales. *Id.* at 643. Through most of 2013, the company reported strong overall sales trends

9  while allegedly concealing slowing sales for the dominant UO brand, before eventually revealing

10  the truth about UO's weak sales numbers in September 2013. *Id.* at 647–48, 656. The court found

11  that the plaintiffs adequately pleaded loss causation by alleging that the company "engaged in

12  misrepresentations of sales trends and concealed the increase in promotional activity and

13  markdowns at UO"; that analysts reacted to the September 2013 corrective disclosure by

14  "draw[ing] a connection between the lagged sales growth of the company as a whole and slowed

15  sales trends in the UO brand"; and that "[i]mmediately following defendants' revelations, and the

16  resulting analyst commentary, the value of the securities in Urban depreciated dramatically." *Id.*

17  at 656. In so concluding, the court noted that "[a]lthough a corrective disclosure must be related

18  to the same subject as the misrepresentation, and not some other adverse facts about the company,

19  there is no requirement that the disclosure mirror the earlier misrepresentation." *Id.* at 655. Here,

20  too, Plaintiffs have alleged that Yelp misrepresented the performance of its local advertising

21  program while concealing advertiser churn rates; that analysts connected the churn issue to Yelp's

22  May 9 lowered earnings forecasts; and that the value of Yelp stock depreciated dramatically

23  immediately following the May 9 disclosure and analyst report. They have thus "plausibly

24

---

25  [4] Plaintiffs' loss causation allegations could well survive a motion to dismiss even if the stock
decline was partially attributable to the lowering of the February 9 earnings forecast, without any

26  regard to the underlying causes. "A plaintiff is not required to show that a misrepresentation was
the *sole* reason for the investment's decline in value in order to establish loss causation." *In re*

27  *Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (citation omitted) (emphasis in original).
"As long as the misrepresentation is one substantial cause of the investment's decline in value,

28  other contributing forces will not bar recovery under the loss causation requirement but will play a
role in determining recoverable damages." *Id.*

8

establish[ed] loss causation." *Gilead*, 536 F.3d at 1057.

### III.    CONCLUSION

For the foregoing reasons, Yelp's motion does not present a "dispositive legal argument[]" for the purposes of Local Rule 7-9(b).  The motion is therefore **DENIED**.

This order disposes of Docket No. 47.


**IT IS SO ORDERED**.


Dated: January 22, 2019

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California