1  **GLANCY PRONGAY & MURRAY LLP**
   JOSHUA L. CROWELL (#295411)
2  STAN KARAS (#222402)
   CHRISTOPHER R. FALLON (#235684)
3  NATALIE S. PANG (#305886)
   1925 Century Park East, Suite 2100
4  Los Angeles, CA 90067
   Telephone: (310) 201-9150
5  Facsimile: (310) 201-9160
   Email: info@glancylaw.com
6
7  *Lead Counsel for Lead Plaintiffs and the Class*

8                  **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | JONATHAN DAVIS and ROEI AZAR, on Behalf of All Others Similarly Situated, | Case No. 3:18-cv-00400-EMC |
|---|---|
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | **STIPULATION AND [PROPOSED] ORDER REGARDING JOINT PROTOCOL FOR ESI AND DOCUMENT PRODUCTION** |
| YELP, INC., JEREMY STOPPELMAN, LANNY BAKER, and JED NACHMAN | |
| Defendants. | Judge: The Honorable Edward M. Chen |

Lead Plaintiff Jonathan Davis and named plaintiff Roei Azar ("Plaintiffs") and Defendants Yelp, Inc., Jeremy Stoppelman, Lanny Baker, and Jed Nachman ("Defendants" and, collectively with Plaintiffs, the "Parties"), by and through their undersigned counsel, hereby submit this Proposed Joint Protocol for ESI and Document Production for this Court's consideration ("Protocol") and respectfully request that the Court enter an Order approving the same.

**1.   PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") and paper Documents, as defined herein, during the pendency of this Action, consistent with the Federal Rules of Civil Procedure and the Local Civil Rules of the United States District Court for the Northern District of California (the "Court"). Nothing in this Protocol shall supersede the Federal Rules of Civil Procedure, the Court's Local Rules, or the provisions of any Order entered by the Court in this matter..

**2.   COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.   LIAISON**

The Parties will identify liaisons who are and will be knowledgeable about and responsible for discussing their respective ESI.  Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.   DEFINITIONS**

4.1   **"Action"** means the above-captioned action.

4.2   **"Confidentiality Designation"** means the legend affixed to Documents or Discovery Material designated as confidential as determined by, and subject to, the terms of the Parties' Stipulated [Proposed] Protective Order governing the use and disclosure of any non-

public and confidential proprietary information in this Action.

  4.3 **"Document(s)"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure. A draft or non-identical copy is a separate document within the meaning of this term. The term "Document" shall include Hard-Copy Documents, Electronic Documents or Data, and ESI as defined herein.

  4.4 **"Electronic Document or Data"** means Documents or Data existing in electronic form at the time of collection, including but not limited to: email or other means of electronic communication, word processing files (e.g., Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), and image files (e.g., PDF).

  4.5 **"Electronically stored information"** or **"ESI"** is defined to be synonymous in meaning and equal in scope to the usage of this term in Rules 26 and 34 of the Federal Rules of Civil Procedure.

  4.6 **"Email"** means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

  4.7 **"Email Threading"** means a single Email conversation that starts with an original Email (the beginning of the conversation), and includes all subsequent replies and forwards pertaining to that original Email.

  4.8 **"ESI"** is an abbreviation of "electronically stored information," which has the broadest possible meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

  4.9 **"Extracted Text"** means text extracted from a Native Format file and includes at least all headers, footers, Document body information, and any hidden text, if available. The Extracted Text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates numbers and Endorsements (except in the cases of redactions as detailed in Section 4.4).

  4.10 **"Hard-Copy Document(s)"** means Documents existing in paper form at the time of collection.

  4.11 **"Hash Value"** means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the

characteristics of the Data set.  The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.  "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

  4.12 "**Instant Messages**" means real time communications sent via a chat client or short message service.

  4.13 "**Load files**" means an electronic file that is used to import all required production information into a Document database, including, if available, Document images, Extracted Text or OCR text, Native Format files where required by this Order, and Metadata, as well as information indicating Document breaks, and Document relationships such as those between an Email or Instant Message and its attachments, and a Document and information related to embedded content.

  4.14 **"Media"** means an object or device, real or virtual, including but not limited to a disc, tape, computer, or other device on which Data is or was stored.

  4.15 "**Metadata**" means:  (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected.  Metadata of the ESI describes, inter alia, the characteristics, origins, usage, and validity of the collected ESI.

  4.16 "**Native Format**" means the format of ESI in which Electronic Document or Data was generated and/or as used by the producing party in the usual course of its business and in its

regularly conducted activities. For example, the Native Format of an Excel workbook is a .xls or .xslx file.

    4.17    "**Optical Character Recognition**" or "**OCR**" means the optical character recognition technology used to read paper Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

    4.18    "**Producing Party**" means any Party or third-party in the Action that produces Documents.

    4.19    "**Receiving Party**" means a Party in the Action to whom Documents are produced.

    4.20    "**Responsive Document**" means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rules of Civil Procedure and/or Court order.

    4.21    "**Searchable Text**" means the native text extracted from an Electronic Document and any Optical Character Recognition text ("**OCR text**") generated from a Hard-Copy Document or electronic image.

    4.22    "**Tagged Image File Format or TIFF**" refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or paper Documents.

    4.23    "**And**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make their use inclusive rather than exclusive, *e.g.*, "and" shall be construed to mean "and/or".

    4.24    "**Include**" and "**Including**" shall be construed to mean "include but not be limited to" and "including, but not limited to,".

    Reference to the singular shall also be deemed to refer to the plural, and vice-versa.

**5.**    **SCOPE**

    The procedures and protocols set forth in this Order shall govern the production format of paper Documents and ESI in this Action, to the extent available.  This Order does not govern any procedures or criteria used to define or limit the scope of production such as identification and preservation of potentially responsive data types and systems, custodian selection, or any

technology-assisted culling or review processes, such as the use of keyword search terms. Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.

The production specifications in this Order apply to Documents that are produced in the first instance in this Action. To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced if the original production included substantially the same Metadata identified in this Order. If such Documents originally were not produced with substantially the same Metadata identified in this Order, the Parties shall meet and confer to identify necessary additional fields and discuss an appropriate Metadata overlay or supplemental Metadata production for those Documents. The Parties agree that this is not a request to produce the same electronically stored information or Documents in more than one form; rather, it is a process for identifying supplemental information that does not require reproduction of previously produced Documents.

**6.    SEARCH AND IDENTIFICATION OF RESPONSIVE ESI**

The Parties agree that in responding to an initial request under Rule 34 of the Federal Rules of Civil Procedure, or earlier if appropriate, they will meet and confer about the methodology (e.g., keyword/Boolean search) and implementation (e.g., search terms, etc.) to be used to identify and search ESI.

**7.    PRODUCTION FORMAT AND PROCESSING SPECIFICATIONS**

7.1    <u>Format Guidelines</u>: The Parties shall, to the extent reasonably and technically possible, produce paper Documents and ESI according to the specifications provided in Exhibit A.

7.2    <u>De-Duplication</u>: A Party is only required to produce a single copy of a responsive Document. Each Party may remove exact duplicate Documents (i.e., identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents. If a Party chooses to remove exact duplicate Documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians of de-duplicated Documents in the Custodian

field delimited by semicolons or in a MasterCustodian field delimited by semicolons (as set forth in Exhibit A).  Moreover, (a) de-duplication shall be performed only at the Document family level so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email, Instant Message, or Document even if they are exact duplicates of another Document in the production, and (c) paper Documents shall not be eliminated as duplicates of responsive ESI.  ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed.  The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

7.3    Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced.  To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents but will produce the processed Document as a native overlay. If Documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected.  Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

7.4    Documents to Be Produced Natively: Responsive Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files, video files, audio files, and animation files shall be produced in Native Format.  If a Document to be produced in Native Format contains privileged information, the Document will be produced by producing the Document in TIFF format with redactions and OCR text to remove the privileged material from the searchable text.  Each electronic file produced in Native Format shall be assigned a unique Bates Number, as set forth in Section 7.7, and the database record for that file shall include a single page TIFF image branded with this unique Bates Number in the lower

right corner of the image as a Bates number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page. To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Protective Order must appear on the associated TIFF placeholder. Files produced in Native Format shall be given file names identical to the Bates Number, followed by the file extension and include the confidentiality designation after the file number, e.g., YELP0000000000_CONF.xlsx. For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

7.5     Embedded Files: OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent Document. Images embedded in Emails shall not be extracted and shall not be produced separately.

7.6     Production of Documents in Native Format: Each Party reserves the right to request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be denied. If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

7.7     Bates Numbers and Confidentiality Designations for TIFF Images: Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Bates Number") containing at least seven (7) digits electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal, or interfere with any information originally appearing on the Document, the Bates Number shall be burned on the lower right hand corner of the Document. Bates numbers and any confidentiality designation should not be included in the Extracted Text of ESI. Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Stipulated Protective Order filed with the Court will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font. The Bates Number for each Document shall be created so as to identify the Producing Party and the Bates Number (e.g.,

"Yelp-Az0000000").  There should not be an underscore or dash between the prefix and the Bates Number.

  7.8 <u>Metadata Fields and Processing</u>: Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document.  The Parties are not obligated to populate any of the fields in Exhibit A manually if such fields cannot be extracted or generated from a Document and its context in the source data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue.  Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.  The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing. For redacted items which were originally ESI, all Metadata fields will be provided and will include all non-privileged non-redacted data.  Redacted Documents shall be identified as such in the Load File provided with the production.  Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible.

  7.9 <u>Production Media</u>: The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Bates Number ranges of the Documents in that production (e.g., "Plfs' Production January 1, 2019, Yelp-Az0000123- Yelp-Az0000456").  To the extent that the Production Media includes any confidential information protected under any Stipulated Protective Order filed with the Court, the label on such Production Media shall indicate

that the Production Media includes information so designated as required under the terms of the Stipulated Protective Order.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Bates Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.  All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

7.10 <u>Original Documents</u>: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated Metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation.  Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rules of Civil Procedure and/or Court Order.

7.11 <u>Scanning of Hard-Copy Documents</u>: In scanning paper Documents, Documents are to be produced as they are kept.  For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable.  Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It.  The Producing Party will use best efforts to unitize Documents (i.e., distinct Documents should not be merged into a single record, and a single Document should not be split into multiple records), and maintain Document relationships (i.e., attachment status).  Original Document orientation (i.e., portrait v. landscape) should be maintained.

**8.    PROCESSING SPECIFICATIONS**

The Producing Party will generate and preserve the MD5 or SHA-1 Hash Values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:  Where Documents are not otherwise produced natively, all TIFF images shall display tracked changes, comments, and other rich data (including, but not limited to, hidden text, strikethrough text, etc.)

9

as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible.  Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Pacific Standard Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

**9.     CONFIDENTIALITY**

Documents produced in the Action shall be subject to the terms of the Stipulated Protective Order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**10.    PRIVILEGE LOG**

The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5).  Any claim that produced Documents are covered by the attorney-client privilege, work product doctrine or other applicable privilege or immunity ("Privileged Material"), any belief that such Documents are not Privileged Materials and any challenge to such claim shall be subject to the terms of the Stipulated Protective Order agreed upon by the Parties, and entered by the Court.  Communications may be identified on a privilege log by category, rather than individually, if appropriate.

**11.    TECHNOLOGY ASSISTED REVIEW**

The Parties agree that if Predictive Coding or Technology Assisted Review ("TAR") will be employed to limit the volume or restrict the scope of documents that will be reviewed to identify relevant documents in response to a request under Federal Rule of Civil Procedure 34, that they will meet and confer in good faith about the parameters and implementation of such Predictive Coding or TAR.

**12.    EMAIL THREADING**

Where Email Threading is available as a review tool, producing Parties agree that it can be employed in the review process, but not to remove relevant and non-privileged lesser included emails in an email thread from productions.

**13. AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

DATED: May 24, 2019         **GLANCY PRONGAY & MURRAY LLP**

By: /s/ *Joshua L. Crowell*
Joshua L. Crowell (#295411)
Stan Karas (#222402)
Christopher R. Fallon (#235684)
Natalie S. Pang (#305886)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
Marshall P. Dees
1200 Ashwood Parkway, Suite 410
Atlanta, Georgia 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Lead Counsel for Lead Plaintiff Jonathan Davis, Plaintiff Roei Azar and the Class*

DATED: May 24, 2019         **ARNOLD & PORTER KAYE SCHOLER LLP**

By:   /s/ *Gilbert R. Serota*
Gilbert R. Serota (#75305)
Benjamin Halbig (#321523)
Zheng (Jane) He (*admitted pro hac vice*)
Three Embarcadero Center, 10th Floor
San Francisco, CA 94111
Telephone: (415) 471-3100
Facsimile: (415) 471-3400
Email: Gilbert.Serota@arnoldporter.com
Email: Benjamin.Halbig@arnoldporter.com
Email: Jane.He@arnoldporter.com

*Attorneys for Defendants Yelp Inc., Jeremy Stoppelman, Lanny Baker and Jed Nachman*

## **ATTESTATION**

I, Joshua L. Crowell, am the ECF user whose identification and password are being used to file this document. In compliance with Local Rule 5-1(i)(3), I hereby attest that each of the Signatories herein, including Counsel for Defendants, concur in this filing.

DATED: May 24, 2019                    *s/ Joshua L. Crowell*
                                                              Joshua L. Crowell

# [PROPOSED] ORDER

**IT IS ORDERED** that the forgoing Agreement is approved.

DATED:   May 28, 2019

_____
THE HONORABLE EDWARD M. CHEN
United States District Judge

# EXHIBIT A

**1. PRODUCTION LOAD FILES**

There will be two Load/Unitization files accompanying all productions of ESI:

- The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields. For all DAT files: if no foreign language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be foreign language Documents, the text encoding must be in Unicode.

- The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks. The acceptable formats for the cross-reference files are .log and .opt.

**2. IMAGES**

- Produce Documents in Single Page Group IV TIFF black and white files.
- Image Resolution of at least 300 DPI.
- If either Party deems the quality of the Document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the Document as a JPEG file.
- File Naming Convention: Match Bates number of the page.
- Insert placeholder image for files produced in Native Format (see Paragraph 10.4.).
- Original Document orientation or corrected orientation shall be retained.

**3. SPECIAL FILE TYPE INSTRUCTIONS**

- Certain file types shall be produced in Native Format, as specified in Paragraph 10.4.
- If redactions are required, see production requirements specified in Paragraph 10.4.

**4. FULL TEXT EXTRACTION/OCR**

- Where available, produce full Extracted Text for all file types (Redacted text will not be produced). Redacted Documents should be re-OCRed and the redacted text should be produced.
- Produce OCR text output for any paper Document.
- Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where Extracted Text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
- *Production format*: Single text file for each Document, not one text file per page.
- *File Naming Convention*: Match Beg Bates Number.

5. **ESI (AND PAPER TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**

- *Source*: Name of Party Producing the Document.
- *BegBates*: Beginning Bates Number.
- *EndBates*: Ending Bates Number.
- *BegAttach*: Beginning Bates number of the first Document in a Document family range. Documents that are part of Document families, *i.e.*, containing parents and attachments should receive a value.
- *EndAttach*: Ending Bates number of the last Document in attachment range in a Document family range. Documents that are part of Document families, *i.e.*, containing parents or attachments, should receive a value.
- *Custodian*: Name of the Custodian of the Document Produced.
- *Duplicate Custodians*: Names of all custodians who had a copy of a Document that was removed through the de-duplication process, if applicable.
- *FileName*: Filename of the original source ESI as stored by the custodian.
- *NativeLink*: Path and filename to produced Native Format file (see Paragraph 10.4).
- *EmailSubject*: Subject line extracted from an Email message.
- *Title*: Title field extracted from the Metadata of a non-Email Document.
- *Author*: Author field extracted from the Metadata of a non-Email Document.
- *From*: From field extracted from an Email message, including both the display name and the SMTP address.
- *To*: To or Recipient field extracted from an Email message, including both the display name and the SMTP address.
- *Cc*: CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- *BCC*: BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- *DateSent*: Sent date and time of an Email message (mm/dd/yyyy format).
- *TimeSent*: Sent time of an Email message or Instant Message (hh:mm:ss format).
- *TimeZoneProcessed*: The originating time zone of the Document.
- *DateCreated*: The origination date of the Document (mm/dd/yyyy format).
- *DateLastModified*: Last modification date and time (mm/dd/yyyy format).
- *PageCount*: The number of pages of the Document, excluding the pages of Documents in the same family.
- *[MD5/SHA1]HashValue*: MD5 or SHA-1 Hash Value, but please specify using field name.

- *File Extension*: File extension of Document (.msg, .doc, .xls, etc.).
- *ExtractedText*: File path to Extracted Text/OCR File.
- *Confidentiality*: "Confidential," OR "Highly Confidential" if a Document has been so designated under the Protective Order; otherwise, blank.
- *Attach Count*: Number of attached files.
- *Message-ID*: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- *Document Type*: Descriptor for the type of Document. "E-document" for electronic Documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical Documents that have been scanned and converted to an electronic image.
- *Importance*: High Importance – indicates priority E-mail.
- *Redacted (Y/N)*: Whether the Document contains redactions.
- *Embedded Source*: The Bates Number of the source file from which the embedded file was extracted (if applicable).

**6.   DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone Documents or entire Document families globally using MD5 or SHA-1 Hash value matching.
- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced.

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On May 24, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Northern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 24, 2019, at Los Angeles, California.

*s/ Joshua L. Crowell*
Joshua L. Crowell