Kara M. Wolke (#241521)
Kevin F. Ruf (#136901)
Christopher R. Fallon (#235684)
Natalie S. Pang (#305886)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: kwolke@glancylaw.com
　　　 kruf@glancylaw.com
　　　 cfallon@glancylaw.com
　　　 npang@glancylaw.com

*Lead Counsel for Class Representative*
*Jonathan Davis and the Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN DAVIS, on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>YELP, INC., JEREMY STOPPELMAN, LANNY BAKER, and JED NACHMAN,<br><br>　　　　　　　　Defendants. | Case No.: 3:18-cv-00400-EMC<br><br>**LEAD PLAINTIFF'S: (1) NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>Hearing Date: January 19, 2023<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor<br>Judge: Hon. Edward M. Chen |

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ............................. 3

III.    STANDARD FOR FINAL APPROVAL UNDER RULE 23(e) ........................................ 3

        A.      The Settlement Is Procedurally Fair, Reasonable, And Adequate ........................... 5

                1.      Lead Plaintiff and Lead Counsel Adequately Represented the Class ........... 5

                2.      The Settlement Is The Result Of Arm's-Length Negotiations..................... 6

        B.      The Settlement Is Substantively Fair, Reasonable, And Adequate .......................... 8

                1.      The Settlement Amount Represents A Significant Portion Of Estimated
                        Damages .................................................................................................. 9

                2.      The Cost, Risk, And Delay Of Trial And Appeal ...................................... 10

                3.      Other Factors Established By Rule 23(e)(2)(C) Support Final Approval ... 13

        C.      The Settlement Treats All Class Members Equitably Relative To Each Other ...... 14

        D.      The Risk Of Maintain Class Action Status Throughout Trial................................ 15

        E.      The Positive Reaction Of The Class Supports Final Approval .............................. 15

IV.     THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ........... 16

V.      THE NOTICE SATISFIED THE REQUIREMENTS OF RULE 23, THE PSLRA AND
        DUE PROCESS ........................................................................................................ 17

VI.     CONCLUSION ........................................................................................................ 18

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>CASES</u>

3

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ....................................................................... 12

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ............................................................................. 12

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ............................................... 6

*Christine Asia Co. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................... 14

*Churchill Village L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................... 5

*City of Providence v. Aeropostale, Inc.*,
   2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................. 7

*Eiesen v. Porsche Cars N. Am., Inc.*,
   2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ................................................. 7

*Feyko v. aAD Partners LP*,
   2014 WL 12572678 (C.D. Cal. Mar. 7, 2014) ............................................. 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................. 4

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) .......................................................................... 12

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................. 5, 7, 9, 15

*Hefler v. Wells Fargo & Company*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................... 4, 9

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................... 12

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................... 8

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................... 7

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................ 10, 11

3
*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................ 12

4
5
*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ................................................ 12

6
7
*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................ 11

8
9
*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ................................................ 7, 8

10
*In re BofI Holding, Inc. Sec. Litig.*,
   2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ................................................ 14

11
12
*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
   2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................................ 14

13
14
*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................ 11

15
16
*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009) ................................................ 10

17
*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................ 8, 16

18
19
*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................ 12

20
21
*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ................................................ 11

22
*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. 2009) ................................................ 10

23
24
*In re Omnivision Tech., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 15, 16

25
26
*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ................................................ 3

27
*In re Tyco Int'l, Ltd.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ................................................ 11

28

*In re Vivendi Universal, S.A., Sec. Litig.*,
  2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ............................................................. 11

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................... 10

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .................................................................... 10

*Lewis v. YRC Worldwide Inc.*,
  2021 WL 4123315 (N.D.N.Y. Sept. 9, 2021) ........................................................... 8

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................................ 6

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 8

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 233- (E.D. Mich. 2016) ......................................................................... 13

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................................... 7

*Trief v. Dun & Bradstreet Corp.*,
  840 F. Supp. 277 (S.D.N.Y. 1993) .......................................................................... 12

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .......................................................... 17

*Wong v. Arlo*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ....................................................... 5, 9

*Yaron v. Intersect ENT, Inc.*,
  2021 WL 5150051 (N.D. Cal. Nov. 5, 2021) ............................................................ 6

STATUTES

15 U.S.C. §78u-4(a)(4) .................................................................................................... 14

15 U.S.C. § 78u-4(a)(7) ................................................................................................... 17

RULES

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

1    **NOTICE OF UNOPPOSED MOTION**

2    **FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

3    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

4          PLEASE TAKE NOTICE that pursuant to Rule 23(e) of the Federal Rules of Civil Procedure

5    and the Court's Amended Order Preliminarily Approving Settlement and Providing for Notice

6    ("Amended Preliminary Approval Order," ECF No. 201), on January 19, 2023, at 1:30 p.m., or as

7    soon thereafter as the matter may be heard at the United States District Judge, in Courtroom 5 (17th

8    Floor), at the United States District Court for the Northern District of California, 450 Golden Gate

9    Avenue, San Francisco, CA 94102, before the Honorable Edward M. Chen, Court-appointed Lead

10   Plaintiff Jonathan Davis ("Lead Plaintiff") will, and hereby does move, for entry of the [Proposed]

11   Judgment Approving Class Action Settlement and the [Proposed] Order Approving Plan of

12   Allocation of Net Settlement Fund.[1]

13          This Motion is based on the following Memorandum of Law, the Joint Declaration, the

14   Declaration of Luiggy Segura Regarding (A) Mailing of Notice Packet (B) Publication of Summary

15   Notice; and (C) Report on Requests for Opting Back into the Class Received to Date (Ex. 1, "Segura

16   Decl."), the Stipulation, all prior pleadings and papers in this Action, and such additional

17   information or argument as may be required by the Court.[2]

18

19

20

21

22

---

23   [1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation
24   and Agreement of Settlement dated April 14, 2022 (ECF No. 189-1), or the concurrently filed Joint
     Declaration of Kara M. Wolke and Corey D. Holzer in Support of (I) Lead Plaintiff's Motion for
25   Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion
     for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Joint Declaration"
26   or "Joint Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and
     exhibits to, the Joint Declaration.
27
     [2] Defendants support entry of the [Proposed] Judgment Approving Class Action Settlement and do
28   not take a position with respect to the Plan of Allocation.

MOTION FOR FINAL APPROVAL OF                                          Case No. 3:18-cv-00400-EMC
CLASS ACTION SETTLEMENT                          vi

1

## STATEMENT OF ISSUES TO BE DECIDED

2        1.  Whether the Court should approve the proposed $22,250,000 all cash, non-

3  reversionary settlement as fair, reasonable, and adequate under Rule 23(e).

4        2.  Whether the Court should approve the Plan of Allocation as fair and reasonable.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF LAW

2   Court-appointed Lead Plaintiff, on behalf of himself and the Class, respectfully submits this

3 Memorandum of Law in support of his Motion, pursuant to Rule 23 of the Federal Rules of Civil

4 Procedure, for final approval of the proposed settlement ("Settlement") of the above-captioned

5 action (the "Action"), and for approval of the proposed plan of allocation of the net proceeds of the

6 Settlement (the "Plan of Allocation").[3]

7

## I.  PRELIMINARY STATEMENT

8   After nearly four years of hard-fought litigation and on the eve of trial, Lead Plaintiff,

9 through his counsel, obtained a $22,250,000 (the "Settlement Amount") all cash, non-reversionary

10 settlement for the benefit of the Class.  As described below and in the Joint Declaration, the proposed

11 Settlement is an excellent result for the Class, providing a significant and certain recovery in a case

12 that presented numerous hurdles and risks.  Lead Plaintiff estimates that the Settlement represents a

13 recovery in the range of approximately 12.4% (under Lead Plaintiff's estimate of $180 million) to

14 41-45% (under Defendants' estimate of $50-$55 million), of the ***maximum*** damages ***potentially***

15 available in this Action, which is well above the median recovery in securities class action

16 settlements.  *See* Ex. 5 at p. 24 (median recovery in securities class actions in 2021 was

17 approximately 1.8% of estimated damages).  The Settlement is, therefore, substantively fair,

18 reasonable and adequate.

19   Moreover, the process by which the Settlement was obtained evidences an arm's-length

20 process that supports a finding of procedural fairness.  As described in detail in the Joint Declaration,

21 prior to reaching the Settlement, Lead Counsel, *inter alia*:

22
23
24
25
26
- conducted a thorough investigation of the claims asserted in the Action, which included an in-depth review and analysis of (i) Yelp's SEC filings, press releases, investor conference calls, and other public statements; (ii) public reports, blog posts, and news articles concerning Yelp; and (iii) research reports prepared by securities and financial analysts regarding Yelp; as well as working closely with an investigator to develop factual allegations based on interviews with former employees, and consultation with loss causation and damages experts;

- moved for the appointment of Lead Plaintiff pursuant to the PSLRA;

27

28

---

[3] The terms of the Settlement are set forth in the Stipulation.  ECF No. 189-1.

- drafted the initial Complaint in the Action, as well as the 45-page Amended Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 25) (the "Complaint");

- researched, drafted, and filed an opposition to Defendants' motion to dismiss, and prepared for and presented oral arguments on the motion;

- prepared for and participated in the Rule 26(f) Conference (ECF No. 53);

- drafted and propounded discovery requests on Defendants, including one set of Requests for Production of Documents, two sets of Interrogatories, and one set of written Requests for Admissions;

- responded to one set of Interrogatories and one set of Requests for Production of Documents propounded upon Lead Plaintiff, and produced 4,000 pages of documents on behalf of Lead Plaintiff;

- engaged in numerous meet and confer discussions with Defendants' Counsel concerning discovery matters, including, *inter alia*, search terms, the relevant time period for which documents were to be produced, custodians, and deponents;

- conducted extensive discovery, including reviewing and analyzing more than 400,000 pages of documents, conducting two Rule 30(b)(6) depositions, and taking the depositions of fifteen current and former Yelp employees, including Individual Defendants;

- researched, drafted, and filed a motion for class certification, which included assisting in the preparation and submission of an expert report on market efficiency by Dr. Zachary Nye, Ph.D. (ECF Nos. 62-63), prepared for and defended Lead Plaintiff's deposition, and drafted and filed the Parties' stipulation for class certification (ECF No. 70);

- consulted with experts in the fields of financial analysis, economic materiality, loss causation, damages, advertising, sales practices and outcomes, which included assisting in the preparation and submission of an expert report on damages by Dr. Nye (ECF No. 143-3) and an expert report on Yelp's advertising and sales practices by Jonathan Hochman (ECF No. 143-7), as well as, preparing for and defending the depositions of Dr. Nye and Mr. Hochman, and opposing Defendants' motion to strike Mr. Hochman's report and testimony (ECF No. 138);

- prepared for and deposed Yelp's expert on economic materiality, loss causation and damages, Dr. Vinita Juneja Ph.D., researched, drafted and filed a motion to strike portions of Dr. Juneja's report and testimony, and prepared for oral argument on the motion (ECF Nos. 145-46);

- researched, drafted and filed an opposition to Defendant's motion for summary judgment (ECF Nos.139-44), which was supported by more than one hundred (100) exhibits;

- prepared for, and participated in, oral argument opposing Defendants' motion for summary judgment and successfully obtained a denial of Defendants' motion;

- prepared for and engaged in two full day mediation sessions with Judge Daniel Weinstein (Ret.) of JAMS and Jed D. Melnick, Esq. of JAMS, and participated in negotiations on an arm's-length basis to settle the claims asserted in the Action;

- drafted and then negotiated the Stipulation and related exhibits; and

1         •   drafted the preliminary approval and final approval briefs. *See* ¶¶9, 15-57.

2         Accordingly, Lead Plaintiff and his counsel had sufficient information to make an informed

3 decision regarding the fairness of the Settlement before presenting it to the Court. ¶12.

4         Lead Plaintiff and Lead Counsel's belief that the Settlement is a fair and adequate result is

5 further supported by, among other things: (1) the certainty of a $22,250,000 recovery today versus

6 the significant risk of a smaller or even no recovery following years of additional litigation; (2) an

7 analysis of the facts adduced to date; (3) past experience in litigating complex securities class

8 actions; (4) the serious disputes between Parties concerning liability and damages; and (5) the

9 favorable reaction of the Class. ¶¶58-74, 77. Lead Plaintiff, therefore, respectfully submits that the

10 Settlement is fair, reasonable, and adequate.

11         Lead Plaintiff also moves for approval of the Plan of Allocation. Lead Counsel developed

12 the Plan of Allocation in conjunction with Lead Plaintiff's damages expert, and it is designed to

13 fairly and equitably distribute the proceeds of the Net Settlement Fund to Class Members. ¶¶13,

14 78-87.

15         For these reasons, and those set forth below and in the Joint Declaration, Lead Plaintiff

16 respectfully requests that the Court grant final approval of the Settlement and Plan of Allocation.

17 **II.**       **FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION**

18         The Joint Declaration is an integral part of this submission. For the sake of brevity in this

19 memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and

20 procedural history of the Action (¶¶15-57); the nature of the claims asserted (¶19); the negotiations

21 leading to the Settlement (¶¶49-55); the risks and uncertainties of continued litigation (¶¶58-73) and

22 the services Lead Counsel provided for the benefit of the Class (¶10).

23 **III.**      **STANDARD FOR FINAL APPROVAL UNDER RULE 23(e)**

24         Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or

25 settlement of class action claims and states that a class action settlement should be approved if the

26 court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit and

27 throughout the country, "there is a strong judicial policy that favors settlements particularly where

28 complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

1   Cir. 2008).[4]  Indeed, class actions readily lend themselves to compromise because of the difficulties

2   of proof, the uncertainties of the outcome, and the typical length of litigation; the settlement of such

3   complex cases greatly contributes to the conservation of scarce judicial resources.  *See, e.g., Garner*

4   *v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding

5   such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and

6   the Court.").

7          According to Rule 23(e)(2), which governs final approval, the four specific factors to

8   consider when determining whether a proposed settlement is fair, reasonable, and adequate are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)  the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitable relative to each other.

15  Fed. R. Civ. P. 23(e)(2).

16         These factors, which went into effect on December 1, 2018, do not "displace" any previously

17  adopted factors, but "focus the court and the lawyers on the core concerns of procedure and

18  substance that should guide the decision whether to approve the proposal."  FED. R. CIV. P. 23(e)

19  advisory committee's notes to 2018 amendment, 324 F.R.D. 904, 918.  "Accordingly, the Court

20  [should] appl[y] the framework set forth in  Rule 23, while continuing to draw guidance from the

21  Ninth Circuit's factors and relevant precedent."  *Hefler v. Wells Fargo & Company*, 2018 WL

22  6619983, at *4 (N.D. Cal. Dec. 18, 2018).

23         Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following

24  "*Hanlon* factors":

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed,

---

[4] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

As explained below and in the Joint Declaration, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Hanlon* factors, demonstrates that the Settlement warrants final approval.[5]

### A.     The Settlement Is Procedurally Fair, Reasonable, And Adequate

#### 1.     Lead Plaintiff and Lead Counsel Adequately Represented the Class

When deciding whether to grant final approval to a class action settlement, the Court must consider whether the "class representatives and class counsel have adequately represented the class." FED. R. CIV. P. 23(e)(2)(A).  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.  This standard is easily satisfied here.  *See* ECF No. 201 at 3.

The substantial work Lead Counsel undertook to represent the Class during the litigation of this Action is set forth above, and in greater detail in the Joint Declaration.  *See* Sec. I, *supra*; Joint Decl., ¶¶10, 15-57.  Here, Lead Counsel committed nearly four years to litigating the Action, completed fact and expert discovery, overcame multiple dispositive motions, and settled just weeks before trial after refusing to settle at the initial mediation in May 2021 when Lead Counsel believed the case was worth more than they could have recovered.  *Id.* at ¶49.  Lead Counsel have, without a doubt, vigorously pursued the Action on behalf of Lead Plaintiff and the Class.

---

[5] Fed. R. Civ. P. 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Wong v. Arlo*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (citing *Hanlon*, 150 F.3d at 1026).  Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor), and the risks of maintaining class action status through the trial (third factor).  *Id.* at *8 (citing *Hanlon*, 150 F.3d at 1026).

Lead Plaintiff's participation was also critical to achieving the Settlement.  Lead Plaintiff's claims are typical of, and coextensive with, the claims of the Class, and he has no antagonistic interests, which motivated him to obtain the largest possible recovery in this Action.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").  Lead Plaintiff was involved throughout the litigation and worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Class.  *See* Ex. 1 (Declaration of Lead Plaintiff Jonathan Davis ("Davis Decl.")), at ¶5.  Among other things, Lead Plaintiff produced approximately 4,000 pages of documents to Defendants, responded to interrogatories, and sat for his deposition.  ¶¶10(g), 38-39; Davis Decl. at ¶5.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel, Glancy Prongay & Murray LLP ("GPM") and Holzer & Holzer, LLC ("H&H"), have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country.  *See* Ex. 3-C (GPM firm resume); Ex. 4-C (H&H firm resume); *see also Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) ("Lead Counsel [GPM and H&H] ha[ve] significant experience in securities class action lawsuits … and Lead Counsel vigorously pursued Plaintiff's claims, including through four rounds of motions to dismiss and amended complaints."); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *2 (N.D. Cal. Nov. 5, 2021) ("Plaintiff's Counsel [GPM and H&H] has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy.").

Finally, the Court previously found that Lead Plaintiff and Lead Counsel adequately represented the Class.  *See* ECF No. 201 ("Amended Preliminary Approval Order"), at 3.  Consequently, this factor militates in favor of final approval.

### 2.     The Settlement Is The Result Of Arm's-Length Negotiations

In weighing approval of a class-action settlement, the Court must also consider whether the settlement was "negotiated at arm's length."  FED. R. CIV. P. 23(e)(2)(B).  Circumstances related to

1    this "procedural" fairness determination of a settlement traditionally include (i) whether counsel has

2    a thorough understanding of the strength [and weakness] of the plaintiff's case[6] based on factors

3    like "the extent of discovery completed and the stage of the proceedings";[7] (ii) the "experience and

4    views of counsel";[8] and (iii) the absence of any indicia of collusion.[9]

5           In application, the Ninth Circuit, as well as other courts, "put a good deal of stock in the

6    product of an arms-length, non-collusive, negotiated resolution."  *Rodriguez v. W. Publ'g Corp.*,

7    563 F.3d 948, 965 (9th Cir. 2009); *see also Eiesen v. Porsche Cars N. Am., Inc.,* 2014 WL 439006,

8    at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established that "all counsel had

9    ample information and opportunity to assess the strengths and weaknesses of their claims and

10   defenses").  Courts also recognize that "[s]ettlements reached with the help of a mediator are likely

11   non-collusive."  *Feyko v. aAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014).

12          Here, the negotiations were contentious and devoid of collusion.  The Parties engaged the

13   Hon. Daniel Weinstein (ret.) of JAMS and Jed D. Melnick, Esq. of JAMS as joint mediators,

14   conducted two full-day mediation sessions that failed to produce a resolution, and continued

15   mediator-guided settlement discussions until both sides ultimately accepted a double-blind

16   mediators' proposal.  *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *7 (C.D. Cal. Oct.

17   25, 2016) (finding settlement resulting from mediators' proposal following two unsuccessful

18   mediations and additional discussions under the auspices of two experienced mediators supported

19   conclusion "that the negotiations were adversarial, fair, and non-collusive."); *see also City of*

20   *Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014), *aff'd sub nom.*,

21   *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[t]his initial presumption of fairness and

22   adequacy applies here because the Settlement was reached by experienced, fully-informed counsel

23   after arm's-length negotiations and, ultimately, with the assistance of Judge Daniel Weinstein, one

24   of the nation's premier mediators in complex, multi-party, high stakes litigation"); *In re Am.*

25

26   [6] *Hanlon*, 150 F.3d at 1026 (first factor).

27   [7] *See id.* (fifth factor).

     [8] *See id.* (sixth factor).

28   [9] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

*Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick).[10]

Furthermore, courts accord "significant weight" to the recommendations of counsel, who are "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Such is the case here, where Lead Counsel, who have a thorough understanding of the strengths and weakness of the claims and extensive prior experience litigating securities class action cases, strongly believe that the $22.25 million Settlement is in the best interests of the Class in light of the significant risks of continued litigation. ¶¶7-12.

It is also important to note that Lead Plaintiff, who was involved in all aspects of the litigation, supports final approval of the Settlement. *See* Davis Decl. at ¶¶4-7. Lead Plaintiff's support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").[11]

Accordingly, this factor weights in favor of final approval.

**B.     The Settlement Is Substantively Fair, Reasonable, And Adequate**

Under Rule 23(e)(2)(C)(i), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with

---

[10] *See also Lewis v. YRC Worldwide Inc.*, 2021 WL 4123315, at *3 (N.D.N.Y. Sept. 9, 2021) ("Settlement resulted from serious, informed, non-collusive negotiations conducted at arm's length by the Settling Parties and their experienced counsel – under the auspices of retired California Superior Court Judge Daniel Weinstein and Jed Melnick, Esq. serving as mediators – and was entered into in good faith.").

[11] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[12]  As discussed below, each of these factors supports the Settlement's approval.

        **1.**      **The Settlement Amount Represents A Significant Portion Of Estimated Damages**

"To evaluate the adequacy of the settlement amount, courts primarily consider Lead Plaintiffs' expected recovery against the value of the settlement offer."  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *9 (N.D. Cal. Dec. 18, 2018).  Here, the $22.25 million Settlement Amount constitutes a meaningful percentage of the maximum possible recovery for the Class, especially taking into account the uncertainty, risks, and costs associated with any attempt to obtain a greater amount.

Lead Plaintiff's damages expert estimates that if the Class had fully prevailed on its Exchange Act claims after a jury trial, if the Court and jury accepted Lead Plaintiff's damages theory, and the jury verdict survived the inevitable appeals, the ***total maximum aggregate damages*** would be approximately $180 million.  Thus, the Settlement Amount represents approximately 12.4% of the total ***maximum*** damages ***potentially*** available in this Action.  This recovery is well above the median recovery of 1.8% in securities class actions settled in 2021, as well as the median recovery of 2.8% for similar securities class actions (with estimated damages of $100-$199 million) from 2012-2021.  Ex. 5 (Stefan Boettrich and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 and p. 23, Fig. 21 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages).

This was, however, Lead Plaintiff's best-case scenario.  Defendants had raised arguments concerning, among other things, liability, loss causation and damages that—if accepted—would have substantially reduced, or completely eliminated, recoverable damages.  For example, Defendants maintained throughout the litigation that (i) Lead Plaintiff's revenue guidance claim was dismissed, and (ii) because the sole corrective disclosure on May 9, 2017, revealed Yelp was

---

[12] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of Lead Plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

decreasing its 2017 guidance, investors were reacting to the guidance reduction and not the alleged fraud.  Thus, according to Defendants, Lead Plaintiff and the Class suffered no damages.  While Lead Plaintiff believed he had the better argument on this issue, a win by Defendants would have eliminated or substantially reduced damages.  *See In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 36 (2d Cir. 2009) ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements").

Moreover, even assuming Lead Plaintiff prevailed against this argument, Defendants would have proffered their own damages expert, who would have testified that maximum class-wide damages were, at most, approximately $50-55 million.  *See* ECF No. 201 at p. 4-5 (citing Defendants' supplemental filing in *Ingrao v. Stoppelman*, Case No. 3:20-cv-02753-EM at ECF No. 60-3).  Under this scenario, the $22.25 million recovery equates to between of 41% and 45% of damages.  When viewed in this context and in light of these substantial risks, the recovery is an extremely favorable result for the Class.  *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. 2009) ("[i]f there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages."); *see also Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *2-3 (D. Nev. Oct. 19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages the lead plaintiff believed could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years).

### 2.    The Cost, Risk, And Delay Of Trial And Appeal

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance against the continuing risk of litigation, including the strengths and weaknesses of

1   Lead Plaintiff's case, against the benefits afforded to class members, including the immediacy and
2   certainty of a recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).
3   "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable
4   to lengthy and expensive litigation with uncertain results."  *In re LinkedIn User Privacy Litig.*, 309
5   F.R.D. 573, 587 (N.D. Cal. 2015).  Securities fraud cases are inherently complex and frequently
6   take a long time to litigate, in part because they often involve significant post-trial motions and
7   appeals.  *See*, *e.g.*, *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb.
8   6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was
9   filed, shareholders had still received no recovery).  Given the "notorious complexity" of securities
10  class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty
11  inherent in long, costly trials."  *AOL Time Warner*, 2006 WL 903236, at *8.

12      Here, there is no question that continued litigation would have been costly, risky, and drawn
13  out.  *See* ECF No. 201 at 5-7 (discussing continued litigation risks, costs and delays).  Indeed, even
14  though Lead Plaintiff prevailed at the summary judgment stage, the Court had not yet ruled on
15  Defendants' motions to strike and to exclude expert testimony.  And, even if Lead Plaintiff prevailed
16  against those motions, he would still need to prove his case at trial.  This would be no small task.
17  Among many other issues, a joint pretrial conference statement would have to be negotiated,
18  motions *in limine* drafted and opposed, jury instructions prepared and most likely fought over,
19  exhibits selected, testimony culled, witnesses prepared, demonstratives created, mock trials
20  conducted, jury consultants engaged, a jury selected, issues briefed throughout the trial, and an
21  estimated two-week trial.  Adding to the uncertainty and risk was how the jury would receive the
22  Parties' respective loss causation and damages experts at trial.  The trial almost certainly would have
23  involved "a battle of experts," with "no guarantee whom the jury would believe."  *In re Cendant*
24  *Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001); *In re Bear Stearns Cos. Sec., Derivative, & ERISA*
25  *Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on
26
27
28

1    winning a so-called 'battle of experts,' victory is by no means assured.").[13]

2         Additionally, even if Lead Plaintiff had prevailed at trial, Defendants could have appealed

3    the verdict.   Trial, post-trial motions, pre-judgment claims administration, and post-judgment

4    appellate proceedings would have added to the expense of this Action and delayed, potentially for

5    years, any recovery to Class Members (with no assurance Lead Plaintiff would prevail or recover

6    any more that the Settlement now provides).  *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787

7    F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of

8    litigation on loss causation grounds and error in jury instruction); *Robbins v. Koger Props., Inc.*,

9    116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).[14]

10        In short, even if Lead Plaintiff were to prevail after trial and appeals, there is no guarantee

11   he would have obtained a judgment greater than the $22.25 million Settlement.  There was, as in

12   any complex securities action, a significant risk that continued litigation might yield a smaller

13   recovery—or indeed no recovery at all—several years in the future.  *See Trief v. Dun & Bradstreet*

14   *Corp.*, 840 F. Supp. 277, 282 (S.D.N.Y. 1993) ("It is beyond cavil that continued litigation in this

15   multi-district securities class action would be complex, lengthy, and expensive, with no guarantee

16   of recovery by the class members.").  By contrast, the Settlement provides a favorable, immediate

17   recovery and eliminates the risk, delay, and expense of continued litigation.  *See In re Advanced*

18   *Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 176 (S.D.N.Y. 2014) ("The present value of a certain

19   recovery at this time, compared to the slim chance for a greater one down the road, supports approval

20   of a settlement that eliminates the expense and delay of continued litigation, as well as the significant

21

22   [13] *See also In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing battle of the experts over damages.").

23

24   [14] *See also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re*

25   *Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)

26   (overturning securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st

27   Cir. 1990) (where the class won a substantial jury verdict and motion for judgment N.O.V. was denied; on appeal, the judgment was reversed and the case was dismissed – after 11 years of

28   litigation).

risk that the Class could receive no recovery."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (recognizing "the issues of scienter and causation are complex and difficult to establish at trial" and therefore concluding "settlement is a prudent course").

### 3. Other Factors Established By Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts must also consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

First, the method for processing Class Members' claims and distributing relief to eligible claimants includes well-established and effective procedures for processing claims submitted by potential Class Members and efficiently distributing the Net Settlement Fund. Here, JND Legal Administration ("JND"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval.[15] Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund. *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

Second, as discussed in the accompanying Fee and Expense Application, Lead Counsel is applying for a percentage of the common fund fee award to compensate them for the services they

---

[15] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶33.

have rendered on behalf of the Class.  The proposed attorneys' fees of 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶17.

Third, in accordance with Rule 23(e)(2)(C)(iv), and as Lead Plaintiff noted in his preliminary approval papers, the Parties entered into a confidential agreement which establishes certain conditions under which Defendants may terminate the Settlement if Class Members, who collectively purchased a certain percentage of Yelp common stock during the Class Period request exclusion (or "opt out") from the Settlement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

### C.   The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  As explained in the Joint Declaration, under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  ¶¶78-86.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *Id*.  Because the proposed Plan of Allocation does not provide preferential treatment to any Class Member, segment of the Class, or to Lead Plaintiff, this factor supports preliminary approval of the proposed Settlement.[16] *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *7–8 (S.D. Cal. Oct. 14, 2022) (finding *pro rata* distribution of settlement constituted equitable treatment of class members); *Christine Asia*

---

[16] Pursuant to the PSLRA, Lead Plaintiff will separately seek reimbursement of costs and expenses incurred as result of his representation of the Class.  *See* 15 U.S.C. §78u-4(a)(4).

1   *Co. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (*pro rata* distribution method

2   of distributing relief "is standard in securities and class actions and is effective").

3       **D.      The Risk Of Maintain Class Action Status Throughout Trial**

4       *Hanlon* also requires the Court to consider the risk of maintaining class action status

5   throughout trial. 150 F.3d at 1026.  Rule 23 provides that a class certification order may be altered

6   or amended any time before a decision on the merits. Fed. R. Civ. P.  23(c)(1)(C).  Thus, as in any

7   class action suit, there is always a risk that a class will be modified or decertified prior to a decision

8   on the merits. *See, e.g., In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008)

9   (even if a class is certified, "there is no guarantee the certification would survive through trial, as

10  Defendants might have sought decertification or modification of the class").  Consequently, this

11  factor favors approving the Settlement.

12      **E.      The Positive Reaction Of The Class Supports Final Approval**

13      Though not included in Rule 23(e)(2), the Class's reaction is also a significant factor in

14  assessing a settlement's fairness and adequacy. *Hanlon*, 150 F.3d at 1026.  "[T]he absence of a

15  large number of objections to a proposed class action settlement raises a strong presumption that the

16  terms of a proposed class action settlement are favorable to class members." *Omnivision*, 559 F.

17  Supp. 2d at 1043.

18      Here, in accordance with the Court's Amended Preliminary Approval Order, JND

19  disseminated an aggregate of 44,942 Notice Packets[17] to potential Class Members and nominees,

20  and the Summary Notice was published once in *Investor's Business Daily* and transmitted once over

21  the *PR Newswire* on September 12, 2022.  *See* Segura Decl., ¶¶14-15.   JND also updated the

22  dedicated       website      established       in      conjunction       with       class       certification,

23  www.YelpSecuritiesLitigation.com,  to  provide  Class  Members  with  information  about  the

24  Settlement and access to downloadable copies of the Notice and Claim Form, as well as copies of

25  the Stipulation, Amended Preliminary Approval Order, and the Complaint. *Id.* at ¶¶18-19.  The

26  website became operational on June 25, 2020. *Id.*  The website also lists the deadlines to opt back

27  _____

28  [17] This figure includes twenty-two (22) Notice Packets that were returned to JND as undeliverable
    with no forwarding address.  *See* Ex. 2 ("Segura Decl.") ¶14, n.3.

1   into the Class, object and file a claim, as well as the date and time of the Court's Settlement Hearing.

2   JND has not received any requests to opt back into the Class (*id.* at ¶22), and, to date, Lead Counsel

3   are not aware of any objections to the Settlement, the Plan of Allocation or the request for attorneys'

4   fees and reimbursement of Litigation Expenses.  ¶77; Segura Decl. ¶22.

5          As provided in the Amended Preliminary Approval Order, Lead Plaintiff will file reply

6   papers in support of the Settlement on January 5, 2022, after the December 29, 2022, deadline for

7   objecting has passed.  Lead Plaintiff's reply papers will address any objections received and/or

8   filed.[18]

9                                    *        *        *

10         As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors support a finding

11  that the Settlement is fair, reasonable, and adequate.  Final approval is, therefore, appropriate.

12  **IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE**

13         In the Amended Preliminary Approval Order, the Court preliminarily approved the Plan of

14  Allocation.  Lead Plaintiff now requests final approval of the Plan of Allocation.  A plan of

15  allocation in a class action "is governed by the same standards of review applicable to approval of

16  the settlement as a whole: the plan must be fair, reasonable, and adequate."  *Omnivision*, 559 F.

17  Supp. 2d at 1045.  An allocation formula need only have a reasonable basis, particularly if

18  recommended by experienced class counsel.  *See Heritage Bond*, 2005 WL 1594403, at *11.

19         The Plan of Allocation, as detailed in ¶¶78-86 of the Joint Declaration and set forth in the

20  Notice (Ex. 2-A (Notice ¶¶55-73)), is based on an out-of-pocket theory of damages consistent with

21  Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff

22  contends could have been recovered under the theories of liability asserted in the Action.  More

23  specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegations that the

24  price of Yelp common stock was artificially inflated during the Class Period due to Defendants'

25  alleged materially false and misleading statements and omissions.  The Plan of Allocation is based

26

27  _____

[18] Lead Plaintiff will submit an updated [Proposed] Judgment Approving Class Action Settlement

28  in conjunction with his reply papers.

on the premise that the decrease in the price of Yelp common stock following the alleged corrective disclosure that occurred after the market closed on May 9, 2017, may be used to measure the alleged artificial inflation in the price of Yelp common stock prior to that disclosure.  ¶82; Notice ¶57.  An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Yelp common stock the Claimant purchased, acquired, or sold during the Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants.

Lead Plaintiff and Lead Counsel believe the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members attributable to the conduct alleged in the Complaint.  ¶86.  To date, no objections to the Plan of Allocation have been received by Lead Counsel or filed on this Court's docket.  ¶87.  For these reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Plan of Allocation.

## V.   THE NOTICE SATISFIED THE REQUIREMENTS OF RULE 23, THE PSLRA AND DUE PROCESS

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B).  The Notice provides all the necessary information required by Rule 23(c)(2)(B) and satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7).  This Court has already found that the proposed notice program is adequate and sufficient (*see* ECF No. 201 at 9-11).  Lead Counsel and JND carried out the notice program as proposed.  In sum, the notice program, detailed in ¶¶75-76 of the Joint Declaration and ¶¶3-20 of the Segura Declaration, fairly apprises Class Members of their rights with respect to the Settlement, and is the best notice practicable under the circumstances. *See Vataj v. Johnson*, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021) (finding notice by mail and published in a newswire with national distribution "provided the best notice practicable to the class members").

1   **VI.    CONCLUSION**

2          For the reasons stated in this memorandum and in the Joint Declaration, Lead Plaintiff

3   respectfully requests that the Court grant final approval of the proposed Settlement and approve the

4   proposed Plan of Allocation.

5

6   Dated: December 15, 2022                          By:  *s/ Kara M. Wolke*
                                                        Kara M. Wolke (#241521)
7                                                       Kevin F. Ruf (#136901)
                                                        Christopher R. Fallon (#235684)
8                                                       Natalie S. Pang (#305886)
9                                                       **GLANCY PRONGAY & MURRAY LLP**
                                                        1925 Century Park East, Suite 2100
10                                                      Los Angeles, California 90067
                                                        Telephone: (310) 201-9150
11                                                      Email: kwolke@glancylaw.com
                                                                kruf@glancylaw.com
12                                                              cfallon@glancylaw.com
                                                                npang@glancylaw.com
13
                                                        -and-
14
                                                        By:  *s/ Corey D. Holzer*
15                                                      Corey D. Holzer (admitted *pro hac vice*)
16                                                      **HOLZER & HOLZER, LLC**
                                                        211 Perimeter Center Parkway, Suite 1010
17                                                      Atlanta, Georgia 30346
                                                        Telephone: (770) 392-0090
18                                                      Email: cholzer@holzerlaw.com
19
                                                        *Lead   Counsel   for   Class   Representative*
20                                                      *Jonathan Davis and the Class*

21

22

23

24

25

26

27

28

1

<u>**PROOF OF SERVICE BY ELECTRONIC POSTING**</u>

2

I, the undersigned, say:

3

I am not a party to the above case and I am over eighteen years old.  On December 15, 2022,

4

I served true and correct copies of the foregoing document, by posting the document electronically

5

to the ECF website of the United States District Court for the Northern District of California, for

6

receipt electronically by the parties listed on the Court's Service List.

7

I affirm under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.  Executed on December 15, 2022, at Los Angeles, California.

9

*s/ Kara M. Wolke*

10

Kara M. Wolke

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

19

Case No. 3:18-cv-00400-EMC